**THEO TORRES**
California State Bar No. 324059
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Theo_Torres@fd.org

Attorneys for Mr. Ortiz

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br>　v.<br>FRANCISCO ORTIZ<br><br>　　　　　Defendant. | Case No.: 21-cr-02503-GPC<br><br>**Mr. Ortiz's Motion to**<br><br>**(1) Compel Discovery;**<br>**(2) Preserve Evidence; and**<br>**(3) Leave To File Further Motions.** |

## NOTICE OF MOTIONS

Francisco Ortiz, by and through counsel, Theo Torres and Federal Defenders of San Diego, Inc., hereby moves this court to compel discovery, preserve evidence and requests leave to file further motions, and submits the following points and authorities in support of his motions.

### I.　　STATEMENT OF FACTS[1]

Mr. Ortiz is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and possessing with the intent to distribute 18 grams of methamphetamine. The charged items were found underneath the seat of a car in which Mr. Ortiz was a passenger, along with several other occupants.

---

[1] This statement of facts is based on the complaint and discovery provided by the government. Mr. Ortiz does not accept this statement as his own, and reserves the right to take a contrary position at motions and trial.

To date, the Government has produced 165 pages of written discovery and several pieces of body-worn camera footage. Of note, the government has disclosed a two-page summary forensic report identifying five distinct DNA profiles on the gun. According to the summary report, Mr. Ortiz is a secondary contributor. The other four contributors are as-of-yet unidentified.

Mr. Ortiz has informally requested further information regarding this evidence. In response, counsel for the government has confirmed that further discovery regarding the DNA report is forthcoming.

Nevertheless, out of abundance of caution, Mr. Ortiz moves for the production by the Government of the discovery described below and for the preservation of evidence. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency or agency acting on behalf of the government. *See generally Kyles v. Whitley*, 514 U.S. 419 (1995); *United States v. Bryan*, 868 F.2d 1032 (9th Cir. 1989).

## II.   THIS COURT SHOULD COMPEL DISCOVERY

Mr. Ortiz moves for the production by the Government of the following discovery and for the preservation of evidence. This request is not limited to those items of which the prosecutor knows, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency.

### A.   DNA Discovery Requests

Mr. Ortiz requests an order compelling the government to disclose the following DNA discovery, which is material to preparing his defense. Specifically, he requests this evidence to: (1) assess the accuracy and integrity of the government's DNA analysis report; (2) conduct an independent investigation with his own expert(s); and (3) to prepare for cross examination of the government's DNA analyst.

1. **Biological testing case file**: Mr. Ortiz requests a complete copy of the case file, including all reports and laboratory notes pertaining to any biological tests, including DNA testing, serological testing, presumptive testing, and statistical calculations. Mr. Ortiz requests high resolution copies of all images in the original case file (including photographs of evidence).

2. **Chain of custody and current disposition of evidence**: Mr. Ortiz requests copies of all records that document the handling of biological evidence in this case, from the initial point of collection up to the current disposition including; where and how the materials were stored (temperature and type of container), the amount of evidence material that was consumed in testing, the amount of material that remains, and where and how the remaining evidence is stored.

3. **Probabilistic Genotyping**: If the testing laboratory used a probabilistic genotyping program to interpret data or calculate statistics, Mr. Ortiz requests all analyses undertaken or attempted, even if they were not used or were not reported. Mr. Ortiz requests these materials in an electronic manner and in native file format. These materials should include:

    a. Names of software programs used, including version numbers.

    b. All records and electronic data used as "input" to the probabilistic genotyping software program including software parameters used to analyze the data (for example, ModelMaker parameters for analyses undertaken using STRmix).

    c. All records and electronic data generated by the probabilistic genotyping software program and/or laboratory personnel (for example, complete STRmix Run Folders for analyses undertaken using STRmix).

    d. All Standard Operating Procedures or other manuals that the testing laboratory relied upon to perform the probabilistic genotyping analysis in this case, as well as all subsequent versions of these documents.

**4.** **Electronic data files (Genotyping programs)**: Mr. Ortiz requests copies of all computer data files created while performing the DNA testing and analyzing the data in this case. These data files should include all sample files (".fsa" and/or ".hid"), project files (".ser"), and matrix files, size standard files, and analysis method files (as applicable). If a particular data file cannot be produced, Mr. Ortiz requests that the government provide an explanation for nonproduction.

**5.** **Standard Operating Protocols and Interpretation Guidelines**: Mr. Ortiz requests the Standard Operating Protocols (SOP) and Interpretation Guidelines relied upon to perform and interpret the testing in this case, as well as all subsequent versions of these documents. He also requests all applicable memos concerned with deviations from established procedures.

**6.** **Validation Summaries**: Mr. Ortiz requests all validation summaries describing validation studies undertaken by the testing laboratory to support use of the testing procedures used in this case, including studies that were outsourced to other laboratories or facilities.

**7.** **Laboratory personnel**:

Mr. Ortiz requests the following information for each person involved in conducting or reviewing the DNA testing performed in this case:

    a.    Current resume

    b.    A summary of proficiency test results

**8.** **Unexpected results and corrective actions**: Mr. Ortiz requests each laboratory's log of unexpected results and corrective actions for the time period beginning 6 months before the start of testing and ending 6 months after the completion of testing. Documentation should be provided for unexpected result events that arose due to mechanical, chemical, and/or analyst operations, including contamination, the presence of extraneous DNA, sample handling errors, or any other reason. Mr. Ortiz requests logs for all laboratory personnel, not just the analyst who performed the testing in this case.

**9.** **Accreditation**: Mr. Ortiz requests copies of the following for any laboratory that performed DNA testing in this case:

    a.    All licenses or other certificates of accreditation held by the laboratory.

    b.    Quality Assurance Audit Documents bracketing the testing in this case, including the last external audit before the start of testing, the first external audit after the completion of testing and all audits, both external and internal, for the time period between. This information should include the audit documents and all communications between the auditing agency and the laboratory being audited.

**10.** **Communications**: Mr. Ortiz requests a copy of all communications between laboratory personnel and any other party regarding biological testing in this case, including letters, memos, emails, texts and records of telephone conversations. These materials should include any communications about outsourcing of DNA testing, statistical calculations and/or uploading of a DNA profiles to a database.

**11.** **Source Code**: At this point, Mr. Ortiz is unsure exactly how authorities conducted the DNA analysis in this case—whether it was a manual comparison or conducted with the aid of software such as STRmix or TrueAllele. In the event that authorities used software to analyze the DNA sample, Mr. Ortiz requests disclosure of the source code underlying the software's conclusions. Such access is necessary for both Mr. Ortiz and the Court to accurately gauge the software's scientific validity and reliability under *Daubert* and Rule 702.

**B.** **General Discovery Requests**

**1.** **The Defendant's Statements**. The Government must disclose to Mr. Ortiz copies of any and **all** written or recorded statements made by him; the substance of any statements (even if not written or recorded) made by him which the Government intends to offer in evidence at trial; any response by the defendant

to interrogation; the substance of any oral statements which the Government intends to introduce at trial and any written summaries of the defendant's oral statements contained in the handwritten notes of the Government agent; any response to any *Miranda* warnings which may have been given to the defendant; and any other statements by the defendant. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> the defendant's statements, whether oral or written, regardless of whether the Government intends to make any use of those statements.

   2.   **Arrest Reports, Notes and Dispatch Tapes**. Mr. Ortiz also specifically requests that all arrest reports, notes, (dispatch or any other tapes), and records that relate to the circumstances surrounding his arrest be turned over. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of the defendant or any other discoverable material is contained. This is all discoverable under Fed. R. Crim. P. 16(a)(1)(A) and *Brady v. Maryland*, 373 U.S. 83 (1963). *See also Loux v. United States*, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to the defendant are available under Fed. R. Crim. P. 16(a)(1)(B) and (c) Fed. R. Crim. P. 26.2 and 12(i). Preservation of rough notes is requested, whether or not the Government deems them discoverable.

   3.   **Brady Material**. Mr. Ortiz requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within *Brady's* definition of evidence favorable to the accused. *United States v. Bagley*, 473 U.S. 667 (1985); *United States v. Agurs*, 427 U.S. 97 (1976).

**4. Any Information that may Result in a Lower Sentence under the Guidelines**.

The Government must produce this information under *Brady v. Maryland*, 373 U.S. 83 (1963).

**5. The Defendant's Prior Record**. Evidence of a prior record is available under Fed. R. Crim. P. 16(a)(1)(D), and Mr. Ortiz specifically requests a complete copy of any criminal record alleged to be his.

**6. Any Proposed 404(b) Evidence**. To the extent that there is any such evidence, the Government must produce for Mr. Ortiz any evidence of prior similar acts under Fed. R. Crim. P. 404(b) and "shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the Government proposes to introduce under Fed. R. Evid. 404(b) at trial. *See United States v. Vega*, 188 F. 3d 1150, 1154-1155 (9th Cir. 1999). Mr. Ortiz respectfully requests that such notice be given three weeks before trial in order to give the defense time to adequately investigate and prepare for trial.

**7. Evidence Seized**. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under Fed. R. Crim. P. 16(a)(1)(E). **Mr. Ortiz specifically requests an itemization of and an opportunity to view any evidence seized by law enforcement as a result of his arrest—specifically the firearm, ammunition, methamphetamine, and any packaging materials.** Mr. Ortiz also requests that the government does not destroy or consume all of the DNA collected without providing Mr. Ortiz an opportunity to conduct his own DNA testing.

**8. Request for Preservation of Evidence**. Mr. Ortiz specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and which relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, individuals, the

results of any fingerprint analysis, the drugs, the firearm, the defendant's personal effects, the vehicle, and any other evidence seized from the defendant or any third party. It is requested that the Government be ordered to question all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist to inform those parties to preserve any such evidence.

9.  **Henthorn Material**. Mr. Ortiz requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent or officer involved in the present case, including each agent involved with Mr. Ortiz's arrest, and produce to him any exculpatory information and impeachment material at least two weeks prior to trial and one week prior to the motion hearing. *See Kyles v. Whitley*, 514 U.S. 437, 438 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *see also United States v. Jennings*, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); *accord United States v. Herring*, 83 F.3d 1120 (9th Cir. 1996). In addition, the defendant requests that if the Government is uncertain whether certain information is to be turned over pursuant to this request, that it produce such information to the Court in advance of the trial and the motion hearing for an in camera inspection.

10. **Tangible Objects**. Mr. Ortiz requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the

defendant. Fed. R. Crim. P. 16(a)(1)(E). **He specifically requests the opportunity to physically examine the gun, ammunition, and drugs seized in this case, as well as any property taken from Mr. Ortiz's person**.

11. **Expert Witnesses**. Mr. Ortiz requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G). Defendant requests the notice of expert testimony be provided at a minimum of two weeks prior to trial so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. *See Kumho v. Carmichael Tire Co.,* 526 U.S. 137, 119 S.Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12. **Impeachment Evidence**. Mr. Ortiz requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to the defendant. *See* Fed. R. Evid. 608, 609 and 613; *Brady,* 373 U.S. at 83; *United States v. Strifler*, 851 F.2d 1197, 1201-1202 (9th Cir. 1988); *Thomas v. United States*, 343 F.2d 49, 53-54 (9th Cir. 1965).

13. **Evidence of Criminal Investigation of Any Government Witness**. Mr. Ortiz requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. *United States v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

14. **Evidence of Bias or Motive to Lie**. Mr. Ortiz requests any evidence that any prospective government witness is biased or prejudiced against him, or has a motive to falsify or distort his testimony. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57-58 (1987); *United States v. Strifler*, 851 F.2d 1197, 1201-1202 (9th Cir. 1988).

**15. <u>Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling</u>**.

The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. *See United States v. Strifler*, 851 F.2d 1197, 1201-1202 (9th Cir. 1988).

**16. <u>Witness Addresses</u>**. Mr. Ortiz requests the name and last known address of each prospective government witness. *See United States v. Cook*, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense counsel has equal right to talk to witnesses). The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness, *United States v. Cadet,* 727 F.2d 1453 (9th Cir. 1984).

**17. <u>Name of Witnesses Favorable to the Defendant</u>**. Mr. Ortiz requests the name of any witness who made an arguably favorable statement concerning the defendant or who could not identify him or who was unsure of his identity, or participation in the crime charged.

**18. <u>Statements Relevant to the Defense</u>**. Mr. Ortiz requests disclosure of any statement relevant to any possible defense or contention that he might assert. *United States v. Bailleaux*, 685 F.2d 1105 (9th Cir.1982).

**19. <u>Jencks Act Material</u>**. Mr. Ortiz requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and Fed. R. Crim. P. 26.2. Advance production will avoid the possibility of delay at trial to allow the defendant to investigate the Jencks material. A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report

or notes to qualify as a statement under § 3500(e)(1). *Campbell v. United States*, 373 U.S. 487, 490-92 (1963). In *United States v. Boshell*, 952 F.2d 1101 (9th Cir. 1991) the Ninth Circuit held that when an agent goes over interview notes with the subject of the interview the notes are then subject to the Jencks Act. *See also United States v. Riley*, 189 F.3d 802, 806-808 (9th Cir. 1999). Mr. Ortiz requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays for defense counsel to properly use any Jencks statements and prepare for cross examination.

**20.** **Giglio Information & Agreements between the Government and Witnesses**.

Pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), Mr. Ortiz requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment.

**21.** **Agreements between the Government and Witnesses**. Mr. Ortiz requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed.

**22.** **Informants and Cooperating Witnesses**. Mr. Ortiz requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Ortiz. The Government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown

or unknowable to the defense. *See Roviaro v. United States*, 353 U.S. 52, 61-62 (1957). The Government must disclose any information derived from informants which exculpates or tends to exculpate the defendant.

23. **Bias by Informants or Cooperating Witnesses**. Mr. Ortiz requests disclosure of any information indicating bias on the part of any informant or cooperating witness. *Giglio*, 405 U.S. at 150. Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. **Personnel Records of Government Officers Involved in the Arrest**. Mr. Ortiz requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Ortiz. Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

25. **Training of Law Enforcement Officers**. Mr. Ortiz requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (the San Diego Police Department and the Bureau of Alcohol, Tobacco, and Firearms, in particular) to their employees regarding: (1) the seizure and subsequent handling of suspected contraband and evidence; and (2) preservation of potential forensic evidence.

26. **Residual Request**. Mr. Ortiz intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure, the Constitution and federal law. *See United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) ("Materiality is a low threshold[.]"). He requests that the government provide his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

## III.

## MOTION TO PRESERVE EVIDENCE

Mr. Ortiz requests an order for the government and its agents to preserve the DNA collected, all video and audio surveillance including body and dash cams, the alleged methamphetamine, and firearm with ammunition seized in this case.

## IV.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defense counsel requests leave to supplement the instant motion if more information is provided by the Government, and leave to file further motions and notices of defense based upon information gained in the discovery process.

## V.

## CONCLUSION

For the foregoing reasons, Mr. Ortiz respectfully requests that this Court grant these motions.

Respectfully submitted,

Dated: April 25, 2022

s/ Theo Torres
Federal Defenders of San Diego, Inc.
Attorney for Mr. Ortiz