1  **THEO TORRES**
2  California State Bar No. 324059
   **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
3  225 Broadway, Suite 900
4  San Diego, California 92101-5030
   Telephone: (619) 234-8467
5  Facsimile: (619) 687-2666
6  Email: Theo_Torres@fd.org

7
8                    **UNITED STATES DISTRICT COURT**
9                   **SOUTHERN DISTRICT OF CALIFORNIA**
10

| 11 | UNITED STATES OF AMERICA, | Case No. 21-cr-02503-GPC |
|---|---|---|
| 12 | Plaintiff | Hon. Gonzalo P. Curiel |
| 13 | v. | January 12, 2024 2:30pm |
| 14 | FRANCISCO ORTIZ, | **Mr. Ortiz's Reply to the Government's Response in Opposition to his Motion to Exclude DNA Evidence** |
| 15 | Defendant | |
| 16 | | |

17
18                          **I.     INTRODUCTION**

19      The government primarily responds to arguments Mr. Ortiz never
20 made and cases he never cited. In so doing, the government ignores his actual
21 claim: that the San Diego Police Crime Lab was not qualified to analyze a
22 five-plus-person complex sample—let alone one in which the suspect is
23 alleged to be a minor contributor to a mixture that already clocked in below
24 the testing kit's weight threshold. The government's arguments to the
25 contrary are premised on the misguided notion that scientific accuracy is
26 irrelevant to admissibility. And contrary to the government's suggestions,
27 Mr. Ortiz welcomes the opportunity to hold an evidentiary on this matter.
28 For these reasons, Mr. Ortiz's *Daubert* motion should be granted.

                                        1

## II. ARGUMENT

### A. The government mischaracterizes Mr. Ortiz's motion as a broadside against DNA evidence generally.

Mr. Ortiz's claim is a narrow one. Instead of challenging the first-order reliability of probabilistic genotyping as a scientific enterprise, Mr. Ortiz instead mounts an as-applied challenge. He does not dispute that the San Diego Crime Lab is qualified to analyze some multi-person touch DNA samples involving fewer than four contributors.

The government, however, frames his motion as "challeng[ing] DNA Probabilistic Genome Typing Methodology generally[.]" Gov't Opp. at 4. It reasons that, "[b]ecause prior precedent has found DNA Probabilistic Genome Typing Methodology reliable, this motion should be denied[.]" *Id.* at 2. It faults Mr. Ortiz for "cit[ing] to no cases that have found general unreliability unspecific to the facts of that case." *Id.* at 5.

### B. The government has not cited to a single case in which a district court admitted DNA analysis with four or more contributors.

But it is the government's citations that are lacking. It cites a series of cases in its response, none of which contain facts analogous to Mr. Ortiz's case. The government has cited no case—and Mr. Ortiz has found none—in which any court has admitted a mixture of five or more persons.

Judge Hayes' recent opinion in *United States v. Hill*, for instance, concerned a three-person mixture in which the defense argued about crime-scene contamination, not STRmix protocol. 21cr107-WQH (Gov't Ex. 1). *United States v. Barton*, too, considered a three-person mixture with the suspect as the identifiable major contributor. 909 F.3d 1323, 1330 (11th Cir. 2018). The sample in *United States v. Grinnage* may have just had one contributor—the issue was apparently not litigated. 486 F. App'x 325, 330

(3d Cir. 2012). The same goes for *United States v. Russell*, No. CR-14-2563 MCA, 2018 WL 7286831 (D.N.M. Jan. 10, 2018).

The government spends roughly a page responding to Mr. Ortiz's reliance on *Williams*. Gov't Resp. at 5 (citing *United States v. Williams*, No. 13-CR-00764-WHO-1, 2017 WL 3498694 (N.D. Cal. Aug. 15, 2017)). It notes that the *Williams* court "did *not* find that the [STRmix] methodology was inherently unreliable (as Defendant asks this Court to do)." *Id.* at 5 (emphasis in original).

Never mind that this is not Mr. Ortiz's argument—this is not even Mr. Ortiz's *Williams*. In his motion, Mr. Ortiz cited the *Williams* decision at 382 F. Supp. 3d 928 (N.D. Cal. 2019). The government seems to have pulled the wrong decision: an unpublished order from 2017, not 2019. *See Williams*, 2017 WL 3498694 (N.D. Cal. Aug. 15, 2017).

As a result, the government does not engage with the right *Williams'* analysis regarding the number-of-contributors issue. The problem there was identical to the problem in Mr. Ortiz's case: that the authorities could not "reliably conclude that only four individuals contributed DNA to the mixture at issue." 382 F. Supp. 3d at 937. The government has done nothing to distinguish *Williams* from our case.

If anything, the government's other citations support Mr. Ortiz. In *United States v. McCluskey*, the court excluded DNA analysis inculpating a minor contributor to a low-quantity complex mixture. 954 F. Supp. 2d 1224 (D.N.M. 2013). In that case, the lab's internal "stochastic threshold" was set at 250 picograms. *Id.* at 1278. Despite this threshold, the analyst proceeded with testing a 215-picogram sample, which she later determined was a two-plus person mixture. Due to the low template size, she decided to use a longer-than-normal injection time to get "optimal" results. *Id.* at 1287. The results inculpated one defendant as a minor contributor to the mixture.

3

The district court excluded this evidence. *Id.* at 2190. It reasoned that the already-too-small sample was rendered irreparably unreliable because of its multi-person mixture nature. Since the minor contributor's sample was presumably far below the minimum thresholds for reliability (less than half of 250 picograms), the government could not carry its burden.

The same applies here. Even assuming there were only five contributors to the sample here, the government is only attributing 144 picograms of the 450-picogram sample to Mr. Ortiz. Just as in *McCluskey*, this 144 picogram contribution falls far below the minimum threshold for reliability. The government has not proven otherwise.

**C. The San Diego Police Crime Lab has not internally or externally validated complex mixtures that resemble the mixture in Mr. Ortiz's case.**

Nor can it. The San Diego Police Crime Lab has not even attempted to validate its ability to reliably analyze greater-than-five-person mixtures. And of the known five-person mixtures it has internally tested, the analysts got almost half wrong. Ex. C at 5.

Unsurprisingly, the lab has never proficiency tested its individual analysts on five-person mixtures. *See* Collaborative Testing Services, Inc., Forensic Testing Program, *Probabilistic Genotyping Test No. 23-5904/5 Summary Report*, available at https://cts-forensics.com/reports/23-5904.5_Web.pdf (containing no five-person mixtures). This lack of proficiency testing defies the guidelines set forth in the President's Council of Advisors on Science and Technology Report cited in Mr. Ortiz's motion. PCAST, *Forensic Science in the Criminal Courts: Ensuring Scientific Validity of Feature Comparison Methods* at 57, available at https://obamawhitehouse.archives.gov/sites/default/files/microsites/ostp/PCAST/pcast_forensic_science_report_final.pdf.

Moreover, the eleven five-person internal validation mixtures did not contain samples as small and complex as the one here, in which the overall sample contained 450 picograms and the secondary contributor was responsible for only 144 picograms of that total. So, even if the lab could reliably identify five-person mixtures under some conditions, they have not proven their ability to do so under conditions anything like this case. This lack of either internal or external validation should be the end of this Court's inquiry.

### D. The government misunderstands Rule 702's requirements.

Finally, the government's *Daubert* analysis is analytically flawed. The government faults Mr. Ortiz for demanding "accuracy" rather than the bare minimum "reliability" that is "relevant to legal admissibility." Gov't. Opp. at 4. In the government's view, Mr. Ortiz's claims go to weight, not admissibility.

But the government misapprehends the 702 standard. As the Supreme Court has made clear, Rule 702 requires judges to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993).

Scientific validity encompasses two concepts: "foundational validity and validity as applied." PCAST Report at 4. Contrary to the government's reliability-not-accuracy framing, foundational validity "requires that it be shown, based on empirical studies, to be *repeatable, reproducible,* and *accurate.*" *Id.* (emphasis in original). Accuracy, then, is an appropriate inquiry under *Daubert*.

Just last month, the Rules Committee amended 702 to make clear that the government's framing is wrong. The rule was amended to make clear that the government must "demonstrate[] to the court that it is more likely than

not that . . . the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(d).

The committee notes make clear that it added this language because too "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility." 2023 Amendment Note 1. "In deciding whether to admit forensic expert testimony, the judge should (where possible) receive an estimate of the known or potential rate of error of the methodology employed, based (where appropriate) on studies that reflect *how often the method produces accurate results.*" 2023 Amendment Note 2 (emphasis added).

This Court should heed these admonitions. The fundamental gatekeeping function of the judiciary requires that this Court make a preliminary determination of the DNA analyst's as-applied accuracy when examining five-person-plus complex mixtures. "Judicial gatekeeping is essential because just as jurors may be unable, due to lack of specialized knowledge, to evaluate meaningfully the reliability of scientific and other methods underlying expert opinion, jurors may also lack the specialized knowledge to determine whether the conclusions of an expert go beyond what the expert's basis and methodology may reliably support." *Id.* This concern is especially salient in a case like this, where the risk of confusion and unfair prejudice is especially high due to the outsized impact of DNA evidence. *United States v. Williams*, No. 3:13-CR-00764-WHO-1, 2017 WL 3498694, at *13 (N.D. Cal. Aug. 15, 2017) (excluding DNA evidence under Rule 403 as well as Rule 702).

## III. CONCLUSION

For these reasons, this Court should exclude the results of the DNA analysis under *Daubert*, Rule 702, and Rule 403.

Respectfully submitted,

DATED: January 5, 2024        */s/ Theo Torres*

Federal Defenders of San Diego, Inc.
Attorneys for Mr. Ortiz
Email: Theo_Torres@fd.org

7