TARA K. MCGRATH
United States Attorney
Brandon J. Kimura
Assistant U.S. Attorney
California State Bar No.: 241220
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9614

Attorneys for the United States

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FRANCISCO ORTIZ,<br><br>Defendant | Case No.: 21CR2503-GPC<br><br>**UNITED STATES' SUPPLEMENTAL REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE DNA EVIDENCE**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

Defendant's focus on the complexity of the number of contributor analysis confuses and conflates an issue of fact for the jury with the legal issue of reliability under *Daubert*. Because STRmix and the San Diego Police Department Crime Laboratory's use of STRmix in 5-person mixtures is reliable for significant contributor ratios (over 10%) and likelihood ratios of $10^4$ or greater, his motion should fail.

## I

## STATEMENT OF THE CASE AND FACTS

The United States incorporates by reference the Statement of Facts set forth in its Opposition to Defendant's Motion to Suppress at Dkt. 37, "Response in Opposition" and its Supplemental Opposition to Defendant's Motion to Exclude DNA Evidence at Dkt. 160.

//
//
//

# II

# ARGUMENT

Studies by the San Diego Police Department Crime Laboratory ("San Diego Crime Lab") and others have established STRmix's reliability in 5-person mixtures. Despite this, Defendant argues the error rate in assigning the number of contributors ("NOC") invalidates STRmix's analysis. Because this argument erroneously conflates and confuses an issue of fact for the jury (complexity of the NOC) with the legal issue of reliability of the analysis, his motion should fail.

### A.   Defendant's Focus on NOC Complexity is Misleading

First, Defendant argues that the complexity of the NOC analysis, because it relies on human judgment, which results in "massive error rates," is grounds for exclusion. He also argues that, for similar reasons, this Court should disregard the San Diego Crime Lab's validation study. Finally, he argues that that the San Diego's Crime Lab analysis of this specimen is unreliable because, again, the NOCs could be up to six-persons. These arguments are misleading and erroneous because they conflate the accuracy of the NOC determination with the ultimate "reliability" of STRmix's DNA analysis.

The "massive error rates" Defendant is referring to is the apparent vs. actual number of contributors. But this "error rate" is misleading because every study presented has shown that STRmix is still reliable in those instances. *See* Dkt. 160, Supp. Opp. This is because STRmix, as argued previously, is conservative in its analysis, resulting in favorable lower likelihood ratios or exclusion for known contributors when errors occur. *See id*. Indeed, the only time potentially inculpatory false inclusions arose within the studies, occurred with low-level contributors (10% or less) at lower likelihood ratios (less than $10^4$), which is not the case here. *See* Dkt. 141, "Daubert Hearing – Day 3" at pgs. 487-92, 516-18. It was, in part, because of these conservative results when NOCs were incorrectly assessed that the San Diego Crime Lab, and others, validated STRmix as reliable for five-person mixtures. *Id*. at 494-95.

The United States' distinction in an "accurate" NOC versus a "reliable" STRmix analysis, which is the ultimate issue under *Daubert*, was best illustrated by Dr. Krane himself:

> **THE COURT:** So does the FBI have studies with respect to this question about the ability to arrive at a reliable count on contributors of -- when you're at the four-, five-, and six-level?
>
> **THE WITNESS:** The FBI has one published paper where they report what they get from STRmix when they use the apparent number of contributors.
>
> **THE COURT:** The same issue?
>
> **THE WITNESS:** Yeah. And -- and so if you do it based on the apparent number, they feel that they can get reliable results. The actual number isn't always the same as the apparent number. I believe, in that study, the FBI did use some six-person mixtures but, again, different people, different personnel, different version of STRmix.
>
> **THE COURT:** But was there a focus on whether the six people who contributed was accurate? Was that the focus, or was it just that STRmix is accurate, even when you feed it a six-person sample?
>
> **THE WITNESS:** *I'm -- I'm a little worried about the use of the word "accurate." That's probably not appropriate. Reliable -- and, here, we think -- reliably developed a likelihood ratio that includes the -- a true contributor and excludes a noncontributor; right?* The FBI, in that one particular study, said the apparent number, when that is entered as the starting proposition, gives them reliable results with STRmix in their hands with that version of STRmix.

*See* Dkt. 140, "Daubert Hearing – Day 2" at pgs. 362-63 (emphasis added). *see also United States v. Lewis*, 442 F. Supp. 3d 1122 (D. Minn. 2020).

The court's decision in *Lewis* is also instructive given the parallels to the current case. In *Lewis*, like this case, the defendant moved to exclude a STRmix DNA analysis in a felon in possession case. *Id*. The analysis returned a result that the swabbed samples taken from the firearm were a complex 4-person mixture. *Id*. at 1126. Like this case, the defendant was determined to be a significant contributor (56%) with a high likelihood ratio ("greater than

one billion times more likely if it originated from [Lewis] and three unknown unrelated individuals than if it originated from four unknown unrelated individuals"). *Id*.

The defendant challenged the admissibility of the result. *Id*. Experts, including Dr. Krane, testified on his behalf and made nearly identical arguments to those made in this case. *Id*. He argued that the reliability of STRmix did not extend beyond 3-person mixtures citing the 2016 PCAST report. *Id*. at 1145. The United States responded citing the same studies in evidence in this case and also noted that, like the San Diego Crime Lab, the lab in *Lewis* had performed its own validation study. *Id*. at 1147-1150. The United States also pointed the *Lewis* court to the SWGDAM guidelines and the labs compliance with those standards as further support for reliability. *Id*. Based on these sources, the *Lewis* court found that STRmix was reliable and that, assuming sufficient DNA material, "had established foundational validity to mixtures of four and five persons." *See id*. at 1156.

The *Lewis* court then moved on to the question of whether STRmix had been reliably applied. *Id*. In so doing, it noted, that the lab was incapable of processing 5-person mixtures. *Id*. at 1157. Contrary to Defendant's arguments in this case, the *Lewis* court did not find that limitation invalidated the analysis of the presumed 4-person sample. This was despite the lab's NOC error rates of 55% to 65% (in contrast to the 45% here). *Id*. at 1158. *Lewis* acknowledged (as the United States does here) the error rate, but reasoned that studies showed that underestimation leads to false exclusions, and "tends to have little effect on the LR for inclusion," and "tends to "provoke" exclusion of known contributors." *Id*. Based on this, *Lewis* found the analysis that defendant was a contributor to the sample, reliably applied and admissible. *Id*.

Similarly, Defendant's arguments regarding error rates in accurately assigning NOC is misleading in that it does not reflect the ultimate "reliability" of the analysis and is thus not grounds for exclusion.

//
//
//

**B. San Diego Crime Lab's Validation Study and Technical Manual Meet Industry Standards Including Accounting for Variables.**

Defendant's next argument is that the sample *may* contain issues including possible related co-contributors, variable contributor mixtures, and possible degradation. This argument fails first, because the Scientific Working Group on DNA Analysis Methods or "SWGDAM" guidelines do not require validation studies to specifically build these variables into their studies. Next, the San Diego Crime Lab validation study and its technical guidelines do account for the stochastic effects of these variables. Finally, Defendants' argument fails because, as argued previously, these variables are present in almost every DNA analysis and have been found to go to the weight, not the admissibility of the testimony.

**1. The Validation Study Followed SWGDAM Guidelines.**

First, Defendant's argument fails because the industry guidelines, the SWGDAM guidelines do not require these specific variables to be tested. As argued previously, the SWGDAM guidelines have become generally, if not universally, accepted by the forensic science community. *Id*. at pg. 469, lns. 9-13; Exh. 13, "2017 SWGDAM Guidelines." The San Diego Crime Lab has closely modeled their own technical interpretation guidelines to be in compliance with SWGDAM's guidance. Dkt.141, "Daubert Day 3 Transcript," at pg. 472, lns. 3-12.

An examination of these "universally" accepted guidelines shows that it does not require any of the variables Defendant's claim invalidate the San Diego Crime Lab validation study. *See* Exh. 13, "2017 SWGDAM Guidelines" at 4-7. To the extent Defendant argues that it was possible for the validation study to include these variables, that is not grounds for exclusion. *United States v. Gissantaner*, 990 F.3d 457, 469 (6th Cir. 2021). In *Gissantaner*, the defendant moved to exclude STRmix DNA results based on testimony, including Dr. Krane's, that the lab's validation study was not reliable because (in part) it did not test for variables similar to the variables Defendant raises in this case. *Id*. The district court excluded the evidence, but the Sixth Circuit reversed. First, the court noted

that the lab had complied with the SWGDAM Guidelines. *Id*. at 467. Then it noted "Rule 702 does not require unstinting perfection in presenting test results," that "[e]ven 'serious deficiencies' in testing…do not render a method untestable," and that the issue is 'scientific validity,' not 'scientific precision.'" *Id*. at 467-68 (citations omitted). Finally, it concluded that the defendant's arguments "were for the jury, not the court." *Id*. at 469; *see also United States v. Anderson*, 673 F. Supp. 3d 671, 687 (M.D. Pa. 2023)(admitting probabilistic genotyping software that complied with SWGDAM and ANSI/ASB standards).

## 2. The San Diego Crime Lab's Validation Study and Technical Guidelines Account for Similar Variables and Stochastic Effects.

The San Diego Crime Lab's validation study, consistent with SWGDAM, did account for similar variables. Additionally, the lab's technical manual, which Mr. Dutra followed, also accounted for the stochastic effects of degradation.

San Diego Crime Lab's validation study was completed on March 18, 2018. Exh. 14, ("5-Person Validation Study"). The lab separately studied 5-person mixtures using apparent NOCs. *Id*. at 10. It also used different contributor amounts including a balanced sample (20% per contributor), a 10-1 sample, and a 16-1 sample. *Id*. at 2; *see* Dkt. 139, "Daubert Hearing – Day 1" at pgs. 167. Thus, while the validation study samples are not a perfect match for the mixture in this case, they do represent a wide variety of contributor amounts.

These mixtures were then run against a database of 10,000 profiles. *Id*. at 11. Again, while the study did not specifically analyze related co-contributors, it did analyze the sample against a significant number of profiles, far more than would be encountered in a real world sample.

Additionally, while these samples were not intentionally degraded, the San Diego Crime Lab has done studies/validations on related stochastic effect (consistent with the SWGDAM Guidelines). Exh. 3. "Crime Lab Unit Technical Manual."; Exh. 13, "2017 SWGDAM Guidelines" at 4-7. These include stutter and peak height ratio expectations, with established analytical thresholds and stochastic thresholds. Exh. 3. "Crime Lab Unit Technical Manual" at pg. 124-29, 160-61, 184, 188.

### 3. **Defendant's Remaining Issues Go to Weight, Not Admissibility.**

Finally, as argued previously, all of Defendant's remaining arguments are issues of fact for the jury. *See* Dkt. 160, "Supp. Opp. to D's Mtn to Exclude DNA Evidence." As shown in the prior briefing, the overwhelming majority of courts have found, both in regards to STRmix, but also other complex DNA methods, that issues relate to NOC, co-contributors, mixture ratios, and degradation are issues of fact for the jury. *Id*.

## V
## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Defendant's Motion to Exclude DNA Evidence be denied.

DATED:                                              Respectfully submitted,

TARA K. MCGRATH
                                                    United States Attorney

                                                    /s/Brandon J. Kimura
                                                    BRANDON J. KIMURA
                                                    Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. Case No. 21CR2503-GPC |
| | ) | |
| Plaintiff, | ) | |
| | ) | CERTIFICATE OF SERVICE |
| v. | ) | |
| | ) | |
| FRANCISCO ORTIZ, | ) | |
| Defendant | ) | |

IT IS HEREBY CERTIFIED THAT:

I, Brandon J. Kimura, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of United States' Response in Supplemental Reply in Opposition to Defendant's Motion Exclude DNA on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Theo Torres, Esq.

Attny for Defendant FRANCISCO ORTIZ

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 4, 2024.

s/*Brandon J. Kimura*
BRANDON J. KIMURA